IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MELINDA JOHNSON, | ) | CASE NO. 1:13-cv-01197 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Melinda A. Johnson ("Plaintiff" or "Johnson") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI"). Doc. 1. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

As discussed more fully below, the ALJ's consideration of and/or discussion of the evidence pertaining to the relevant time period is inadequate. As a result, it is unclear whether the ALJ considered all relevant evidence, including mental health treatment records and the opinion of the consultative examining psychologist. Even if the ALJ did consider all relevant evidence, the Court lacks the ability to conduct a meaningful review of the ALJ's decision to determine whether it is supported by substantial evidence because the ALJ failed to explain how

1

he accounted for the evidence in assessing Johnson's RFC. Accordingly, the undersigned recommends that the Court **REVERSE and REMAND** the Commissioner's decision.

## I. Procedural History

**A.     Current claim**

On or about August 14, 2009, Johnson filed an application for SSI. Tr. 22, 72-73, 129-131. Johnson alleged a disability onset date of November 29, 2006. Tr. 129, 132, 136. She alleged disability due to depression, anxiety, panic attacks, back problems and shoulder problems. Tr. 36, 72-73, 76, 82, 136. After initial denial by the state agency (Tr. 76-78), and denial upon reconsideration (Tr. 82-84), Johnson requested a hearing (Tr. 85-86). An administrative hearing was held before Administrative Law Judge Peter Beekman ("ALJ") on July 26, 2011. Tr. 32-55.

In his September 1, 2011, decision, the ALJ determined that Johnson had not been under a disability since August 14, 2009, the date she filed the application. Tr. 19-27. Johnson requested review of the ALJ's decision by the Appeals Council. Tr. 15-16. On April 9, 2013, the Appeals Council denied Johnson's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-4.

**B.     Prior claims**

On November 4, 2002, Johnson applied for social security disability benefits. Tr. 59. That claim was denied initially on May 2, 3003, and after reconsideration on August 6, 2003. Tr. 59.

On March 5, 2005, Johnson applied again for social security disability benefits. Tr. 59. Following an initial denial and denial upon reconsideration, Johnson requested a hearing and ALJ Edmund Round ("ALJ Round") conducted a hearing. Tr. 66. On November 28, 2008, ALJ

Round issued a decision denying Johnson's application for benefits. Tr. 56-71. He concluded that Johnson had severe impairments of major depressive disorder and borderline intellectual functioning, with the following RFC: "She has no exertional limitations. She is limited to simple, routine, low-stress tasks that do not involve arbitration, confrontation, negotiation, or directing the work of others." Tr. 63. Relying on vocational expert testimony, ALJ Round concluded that there was work that existed in significant numbers in the national economy that Johnson could perform. Tr. 65-66.

## II. Evidence

**A.     Personal and vocational evidence**

Johnson was born in 1983 and was 28 years old at the time of the hearing. Tr. 35, 129, 132, 140. She has a high school education. Tr. 35. While in school, Johnson attended special education classes and was involved in a work study program. Tr. 247, 481. She lives alone with her minor son. Tr. 201, 542, 599. She does not have a driver's license because she has been unable to pass the Ohio driver's test. Tr. 42-43. Johnson's mother died in 2000. Tr. 542. Johnson's two and three year old niece and nephew died in 2007.[1] Tr. 512. Johnson worked in the past as a home health aide, a clerk in a school, and an assembler and packager in a factory. Tr. 35, 48, 143-147.

**B.     Medical and opinion evidence**

    **1.     Opinion evidence**

        **a.     Consultative examining psychologist**

            **i.     Psychological**

---

[1] There is some discrepancy in the records as to how her niece and nephew died. *Compare* Tr. 512 (indicating that her niece and nephew died in a car accident) *with* Tr. 508 (indicating that her niece and nephew died in a fire).

3

On December 3, 2009, clinical psychologist Richard C. Halas, M.A., conducted a consultative psychological examination.  Tr. 540-543.  He diagnosed major depression, recurrent type; generalized anxiety disorder with occasional panic attacks; and borderline intellectual functioning.  Tr. 543.  Dr. Halas opined that Johnson had moderate impairments in her ability to: (1) understand, remember, and follow instructions and/or directions; (2) maintain attention and concentration to perform simple, repetitive tasks; and (3) relate to others, including fellow workers and supervisors.  Tr. 543.  Dr. Halas also opined that Johnson had marked impairments in her ability to withstand the stresses and pressures associated with day-to-day work activities.  Tr. 543.  He noted that Johnson's symptoms of anxiety and depression were likely to become quickly exacerbated under the pressures of a normal work setting.  Tr. 543.

### ii. Physical

On July 6, 2010, Franklin D. Krause, M.D., conducted a consultative physical examination.  Tr. 599-604.  His final diagnoses included a history of emotional problems and status post bariatric surgery with 90 pounds lost (but with 40 pounds subsequently regained).  Tr. 599-600.  He opined that Johnson "does have emotional issues.  Physically there appears to be minimal limitations to her continuing to work on a previous level as a home health aide."  Tr. 600.

### b. State agency reviewing physician

### i. Psychological

*Leslie Rudy, Ph.D.*

On March 1, 2010, Leslie Rudy, Ph.D., completed a Psychiatric Review Technique ("PRT") (Tr. 546-559) and a Mental RFC Assessment (Tr. 560-564).  In the PRT, Dr. Rudy

4

concluded that Johnson did not have an impairment that met Listing 12.02, 12.04, or 12.06[2] (Tr. 546, 547, 549, 551) but she concluded that Johnson had borderline intellectual functioning (Tr. 547), major depression, recurrent type (Tr. 549), and GAD (generalized anxiety disorder) with occasional panic attacks (Tr. 551). Dr. Rudy opined that Johnson had moderate limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. Tr. 556. Johnson had no episodes of decompensation of extended duration. Tr. 556.

> In the Mental RFC Assessment, Dr. Rudy stated:
>
> The CE's opinion of marked limitations in stress tolerance is not given weight as it is not supported by the totality of the evidence. Clmt arrived to the appt on time, was motivated and made good eye contact. She has never been psychiatrically hospitalized or required intervention at a crisis center. She is currently not taking psychotropic medications. 4-14-09 and 8-4-09 office visits with primary care physician documents clmt's denial of any psych conditions. No documentation of observation of any depression or anxiety. Clmt was described as anxious, tense and tearful at the CE appt. Evidence supports moderate limitations in this domain. Clmt's allegations are generally consistent with MER and are credible.

Tr. 562.

Dr. Rudy then stated that his Mental RFC assessment adopted ALJ Round's RFC:

> The MRFC given is an adoption of the ALJ's MRFC dated 11-29-08. The MRFC is being adopted under AR 98-4 Drummond Ruling.[3]

Tr. 562.

*Douglas Pawlarczyk, Ph.D.*

---

[2] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

[3] ALJ Round's decision was actually dated November 28, 2008. Tr. 56. AR 98-4 and *Drummond* [*v. Com'rof Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)], which deal with the effect of a previous ALJ decision on a subsequent ALJ decision, are discussed below.

On May 17, 2010, as part of the reconsideration of Johnson's claim, Douglas Pawlarczyk, Ph.D., reviewed Johnson's file and affirmed Dr. Rudy's PRTF/MRFC adopting ALJ Round's decision.[4]  Tr. 585.

### ii. Physical

*Leslie Green, M.D.*

On March 16, 2010, Leslie Green, M.D., reviewed Johnson's file and determined that Johnson's alleged physical impairments, including her allegations of back pain, were not severe. Tr. 565.  Dr. Green indicated, "I have looked at the final findings of the ALJ's decision 11/28/2008 and find that the new file does not have new and material changes; The ALJ is being adopted under AR-94 Drummond Ruling because there is no new and material evidence."  Tr. 565.

*David Brock, D.O.*

On July 12, 2010, David Brock, D.O., as part of the reconsideration of Johnson's claim, reviewed the file.  Tr.605.  Dr. Brock gave great weight to consultative examiner Dr. Krause's opinion regarding Johnson's functioning.  Tr. 605.  He found no indication of significant back, shoulder problems and affirmed Dr. Green's March 16, 2010, assessment as written.  Tr. 605.

**C.    Testimonial evidence**

**1.    Plaintiff's testimony**

Johnson was represented by counsel and testified at the hearing. Tr. 35-45.  She testified about her depression and anxiety.  Tr. 35-42.  When her mother died in 2000, she started having anxiety.  Tr. 36, 44.  Beginning in 2008, following the death of her niece and nephew, her

---

[4] Dr. Pawlarczyk noted that, to be consistent with that ALJ decision, the adoption should include only the conclusions with respect to Listings 12.04 and 12.05.  Tr. 585.

6

anxiety worsened. Tr. 36. After her niece and nephew died, Johnson started having panic attacks. Tr. 44. She experiences panic attacks more frequently now and she stays at home a lot more and keeps to herself. Tr. 36. Johnson stated that she experiences panic attacks about once or twice each week (Tr. 39) and they last about 10 minutes (Tr. 38). When she has a panic attack, Johnson gets antsy and cannot be around other people and she gets short of breath, sweaty and jittery. Tr. 38. She also stated that she becomes paranoid, which she described as a nervous feeling. Tr. 38-39.

A few months before the hearing, in April 2011, Johnson went to the emergency room because she was having a panic attack, could not breathe and her chest was real tight. Tr. 39. Johnson stated that this particular panic attack occurred while she was at a grocery store. Tr. 40. She had to leave the store because she could not breathe. Tr. 40. It was the anniversary of the death of her niece and nephew and she was planning on going to the cemetery to visit them. Tr. 40. While she does not always go to the hospital for her more frequent panic attacks, Johnson stated that the panic attack in April 2011 was really bad. Tr. 41. She has never been hospitalized in a psychiatric hospital because of panic attacks. Tr. 39.

If Johnson is unable to learn a task as quickly as she should, she gets anxious, which can cause her not to perform the task correctly. Tr. 42. For example, she has been unable to pass the Ohio driver's test.[5] Tr. 42. She attempted to take the test three or four times but has been unable to pass. Tr. 43.

Johnson takes Prozac as well as medication for anxiety and sleep. Tr. 37. She told her doctors that the Prozac did not make her feel well so her doctors were going to try a different medication. Tr. 37-38.

---

[5] She stated that she would become very nervous when cars pulled up beside her car when she was trying to take the driver's test. Tr. 42.

On an average day, she takes care of her son. Tr. 36. Some days, she does not want to get out of bed. Tr. 36. If she is unable to take her son to his medical appointments, Johnson's aunt will take him. Tr. 37. Over the prior year, her aunt had taken her son to about 10 medical appointments for her. Tr. 37. Her aunt also comes over to Johnson's house at least every other week to help out and her sister comes over every week to help too. Tr. 43.

In 2007, the Bureau of Vocational Rehabilitation assisted Johnson with securing a job in a nursing home. Tr. 41. Johnson indicated that the job did not go well though because she missed a lot of days due to depression and it was hard for her to focus. Tr. 41.

### 2. Medical expert's testimony

Medical Expert Joseph Steiner, Ph.D., ("ME") testified at the hearing. Tr. 45-48, 100. The ME testified that Johnson has the following severe impairments: borderline intellectual functioning; major depressive disorder, recurrent; generalized anxiety disorder; and anxiety disorder, not otherwise specified. Tr. 45. He testified that Johnson did not have an impairment that met or equaled a Listing. Tr. 45.

The ME opined that Johnson should be limited to performing simple, routine tasks, with one or two step directions; low-stress tasks without arbitration, confrontation, negotiation, and no directing others; and only superficial contact with the public. Tr. 45-46.

In response to questions from Johnson's counsel, the ME testified that Johnson's testimony that she missed work while working at the nursing home was not consistent with her medical records. Tr. 46. He supported his opinion with references to medical examinations that he concluded found Johnson's symptoms to be within normal limits. Tr. 46 (referencing Exhibits 24F, 23F, 20F, 11F, 10F, and 7F). He testified that his suggested work limitations accounted for findings that Johnson was "moderately ill." Tr. 46. The ME stated that someone with moderate

impairments as reflected in some of Johnson's records would have some difficulty at work but not to any marked degree. Tr. 47. The ME stated that he disagreed with Dr. Halas's opinion that Johnson was markedly impaired in her ability to handle the stress of day-to-day work "[b]ecause of all the other evidence that was available to me that wasn't available to him and all those normal symptoms within normal limits, moods within normal limits, examinations." Tr. 47-48.

### 3. Vocational expert's testimony

Vocational Expert Brett Salkin ("VE") testified at the hearing. Tr. 48-55. The VE described Johnson's past work. Tr. 48. She worked as a home health aide, which is a semi-skilled, medium level position.[6] Tr. 48. She worked at an assembly job and at a packaging line worker job, which are unskilled, light level positions. Tr. 48. Finally, she worked as a clerk at a school, which the VE described as a general clerk job that is a semi-skilled, light level position. Tr. 48-49.

The ALJ asked the VE to assume a hypothetical individual with the same educational and work experience as Johnson who has no exertional limitations but non-exertional limitations as follows: should not perform complex tasks but can do simple, routine tasks, one- to two-step; work should be low stress with no high production quotas, no piece-rate work; no work involving arbitration, negotiation, or confrontation; no supervision; and only superficial interpersonal interactions with the general public.[7] Tr. 49-50. The VE indicated that the described individual would not be able to perform Johnson's past work. Tr. 50. However, there were other jobs that the described individual could perform, including (1) dishwasher, a medium,

---

[6] The VE noted that the record reflects that Johnson performed the position at the heavy level. Tr. 48.

[7] The ALJ clarified that the limitation of only superficial interpersonal interactions with the general public did not exclude contact with the public but that contact should be of a short duration and for a specified purpose. Tr. 49.

9

unskilled position, with 3,000 jobs available in the Cleveland metropolitan economy ("regionally"), 50,000 statewide, and 520,000 nationwide; (2) laundry worker, a medium, unskilled position, with 1,580 jobs available regionally, 8,400 statewide, and 221,000 nationwide; and (3) cleaner, a medium, unskilled position with 2,600 jobs available regionally, 14,000 statewide, and 450,000 nationwide. Tr. 50. In response to questions from Johnson's counsel, the VE indicated that each of the listed jobs had reasoning levels of 2. Tr. 50. Johnson's counsel objected to the jobs, arguing that the ALJ and Dr. Steiner both indicated that there should be one- to two-step instructions and a reasoning level of 2 goes beyond that. Tr. 52. Johnson's counsel argued that a reasoning level of 2 requires an individual to apply common sense understanding to carry out detailed instructions, whereas a reasoning level of 1 requires an individual to apply common sense understanding to carry out simple one- to two-step instructions. Tr. 52.

The ALJ noted that he would reserve judgment on the issue raised by Johnson's counsel but proceeded to ask the VE whether he could identify any jobs in the national or regional economy in significant numbers with a reasoning level of 1. Tr. 52. In response, the VE indicated that there were jobs available to meet that requirement, including (1) housekeeper, a light level position, with 1,200 jobs available regionally, 6,500 statewide, and 206,000 nationwide;[8] and (2) and farm worker, a medium level position, with 2,000 jobs available statewide and 233,000 nationwide.[9] Tr. 52-54.

### III. Standard for Disability

---

[8] Although an individual performing work as a housekeeper would be required to clean a certain number of rooms and complete a certain number of tasks, in response to a question from Johnson's counsel, the VE indicated that he viewed those requirements as standard performance requirements as opposed to a quota. Tr. 54.

[9] The VE was unable to provide the regional numbers. Tr. 53.

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his September 1, 2011, decision, the ALJ found that:[10]

1. Johnson has not engaged in substantial gainful activity since August 14, 2009, the application date. Tr. 24.

2. Johnson has the following severe impairments: borderline intelligence, major depressive disorder, generalized anxiety disorder and anxiety disorder NOS. Tr. 24.

3. Johnson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 24-25.

4. Johnson has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, routine, low stress tasks, she is precluded from work involving arbitration, negotiation, or confrontation, she is limited to minimal interaction with the public, and she cannot supervise the work of others. Tr. 25-26.

5. Johnson is unable to perform any past relevant work. Tr. 26.

6. Johnson was born in 1983 and was 26 years old, defined as a younger individual age 18-49, on the alleged disability onset date. Tr. 26.

7. Johnson has at least a high school education and is able to communicate in English. Tr. 26.

8. Transferability of job skills was not an issue because Johnson's past relevant work was unskilled. Tr. 26.

---

[10] The ALJ's findings are summarized.

    9.    Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Johnson can perform, including housekeeper and farm worker.  Tr. 26-27.

Based on the foregoing, the ALJ determined that Johnson had not been under a disability since August 14, 2009, the date she filed the application.  Tr. 27.

## V. Parties' Arguments

### A. Plaintiff's Arguments

Johnson argues that the ALJ misapplied *Drummond v. Comm'r of Soc. Sec*, 126 F.3d 837 (6th Cir. 1997) ("*Drummond* ") and Acquiescence Ruling 98-4(6), 1998 SSR LEXIS 5 (June 1, 1998) in formulating Johnson's residual functional capacity ("RFC") because the ALJ did not properly account for or consider new and material evidence relating to her mental health.  Doc. 15, pp. 12-14.  She argues that the ALJ erred by invoking AR 98-4(6) and not including additional limitations resulting from her anxiety disorders, including limitations that accounted for consultative examining psychologist Dr. Richard C. Halas's opinion that Johnson's ability to withstand the stresses and pressures associated with day-to-day work activities was markedly impaired.  Doc. 15, pp. 12-14.

### B. Defendant's Arguments

Defendant argues that the ALJ's RFC and decision are supported by substantial evidence, including the opinion of ME Dr. Steiner.  Doc. 16, pp. 12-16.  Defendant also asserts that the ALJ's decision is consistent with *Drummond* and AR 98-4(6).  Doc. 16, pp. 13-14.  She argues that ALJ Beekman found additional impairments and limitations beyond those set forth in ALJ Round's November 28, 2008, decision.  Doc. 16, p. 13.  Further, Defendant argues that ALJ Beekman's recognition that Dr. Steiner's medical expert opinion was consistent with ALJ

Round's November 28, 2008, decision did not require ALJ Beekman to adopt the limitations contained in Dr. Halas's opinion. Doc. 16, pp. 13-14.

In a footnote, the Defendant also argues that, although ALJ Beekman did not specifically reject Dr. Halas's opinion, no harm can be shown from the ALJ's failure to do so. Doc. 16, p. 14, n.4. Defendant asserts that the ALJ implicitly accepted Dr. Steiner's opinion, that opinion conflicted with Dr. Halas's opinion, and Dr. Steiner explained that Dr. Halas's marked impairment finding was inconsistent with Johnson's medical records. Doc. 16, p. 14, n.4. Thus, Defendant argues that the ALJ implicitly rejected Dr. Halas's opinion. Doc. 16, p. 14, n.4.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### A. *Drummond* and AR 98-4(6)

In arguing that the ALJ improperly applied *Drummond* and AR 98-4(6), Johnson asserts that the ALJ did not properly consider her alleged exacerbation of symptoms and/or the opinion of Dr. Halas that Johnson was markedly impaired in her ability to withstand the stresses and pressures associated with day-to-day activities and his opinion that Johnson's symptoms of

anxiety and depression were likely to become quickly exacerbated under the pressures of a normal work setting. Doc. 15, pp. 13-14.

In *Drummond v. Comm'r of Soc. Sec*, the Sixth Circuit stated that "absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." 126 F.3d 837, 842 (6th Cir. 1997). The Social Security Administration acquiesced in this ruling. *See* Acquiescence Ruling 98-4(6), 1998 SSR LEXIS 5 (June 1, 1998) ("AR 98-4(6)). In AR 98-4(6), the Social Security Administration stated, "When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." *Id* at *9.

When discussing his RFC findings, ALJ Beekman stated the following with respect to the prior November 28, 2008, decision of ALJ Round:

> I note that Ms. Johnson has a previous Administrative Law Judge Denial Decision dated 11-28-2008 [Exhibit 1A]. The Judge found Ms. Johnson has no exertional limitations and was limited to simple, routine tasks not involving arbitration, negotiation, confrontation, or supervision of others. The opinions of the medical expert before me comport with the opinions of this Judge (AR 98-4(6)].

Tr. 26.

The ALJ referenced AR 98-4(6) when discussing ME Dr. Steiner's opinion but did not expressly state that he was applying AR 98-4(6) and adopting ALJ Round's prior decision. Tr. 26. He did not specifically discuss whether he concluded that there was new and material

15

evidence such that he would not be bound by the prior ALJ's determination. Further, a review of ALJ Beekman's decision shows that he did not simply adopt ALJ Round's findings and RFC.

For example, the ALJ did find two additional severe impairments, generalized anxiety disorder and anxiety disorder NOS, that had not been included in the prior ALJ's findings. *Compare* Tr. 24 (ALJ Beekman's decision finding severe impairments of borderline intellectual functioning, major depressive disorder, generalized anxiety disorder and anxiety disorder NOS) *with* Tr. 61 (ALJ Round's decision finding severe impairments of major depressive disorder and borderline intellectual functioning). Further, ALJ Beekman's RFC contained additional limitations beyond those included in ALJ Round's RFC. *Compare* Tr. 25-26 (ALJ Beekman's RFC limited Johnson to simple, routine, low stress tasks; she was precluded from work involving arbitration, negotiation, or confrontation; she was limited to minimal interaction with the public; and she could not supervise the work of others) *with* Tr. 65-66 (ALJ Round's RFC limited Johnson to simple, routine, low-stress tasks that do not involve arbitration, confrontation, negotiation, or directing the work of others).

Based on the foregoing findings, although the ALJ mentions AR 98-4(6), ALJ Beekman did not actually adopt ALJ Round's prior findings and RFC determination.[11] Accordingly, Johnson has failed to demonstrate that the ALJ's mere mention of *Drummond* and AR 98-4(6) is a basis for reversal or remand. However, as discussed below, reversal and remand is warranted because it is unclear whether and to what extent the ALJ considered Johnson's allegations concerning the worsening of her symptoms and/or the opinion of Dr. Halas that Johnson was markedly impaired in her ability to withstand the stresses and pressures associated with day-to-day activities.

---

[11] The undersigned notes that certain state reviewing physicians indicated that they were applying AR 98-4(6). Tr. 562 (Dr. Rudy); Tr. 565 (Dr. Green). As discussed more fully below, the ALJ failed to discuss that opinion evidence and the undersigned may not speculate as to what weight, if any, the ALJ gave those opinions.

16

B.     **The ALJ did not fully consider the evidence and/or did not fully explain the weight provided to the opinion evidence**

During the administrative hearing, Johnson testified that her symptoms resulting from her mental impairments worsened in 2008 following the death of her niece and nephew. Tr. 44. She indicated that it was after her niece and nephew died that she started to have panic attacks. Tr. 44. Additionally, on December 3, 2009, Dr. Halas examined Johnson and opined in part that Johnson was markedly impaired in her ability to withstand the stresses and pressures associated with day-to-day activities and that Johnson's symptoms of anxiety and depression were likely to become quickly exacerbated under the pressures of a normal work setting. Tr. 543.

The ALJ's discussion of the evidence consisted of the following four sentences:

> I note that Ms. Johnson has a previous Administrative Law Judge Denial Decision dated 11-28-2008 [Exhibit 1A]. The Judge found Ms. Johnson has no exertional limitations and was limited to simple, routine tasks not involving arbitration, negotiation, confrontation, or supervision of others. The opinions of the medical expert before me comport with the opinions of this Judge (AR 98-4(6)].
>
> Though Ms. Johnson has borderline intelligence, is depressed and is anxious, she is oriented, cooperative, lives with her young son, cooks, cleans, shops, does the laundry, and she has no criminal history and has never been hospitalized for psychiatric reasons [Exhibits 1F, 10F, and 11F].[12]

Tr. 26.

"An ALJ is bound to adhere to certain governing standards when assessing the medical evidence in support of a disability claim." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 545 (6th Cir.2004)). "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings."

---

[12] Exhibit 1F is educational records dated March 15, 2002 (Tr. 245-280); Exhibit 10F is mental health treatment notes from Pathways, Inc., dated March 9, 2004, through August 28, 2009 (Tr. 495-539); and Exhibit 11F is Dr. Halas's December 3, 2009, opinion (Tr. 540-543).

17

*Id.* (citing 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. § 404.1513). The Regulations provide that the Commissioner "will always consider the medical opinions in . . . [a claimant's] case record together with the rest of the relevant evidence . . . receive[d]." 20 C.F.R. § 416.927(b). Further, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."[13] 20 C.F.R. § 426.927(e)(2)(ii).

"[A]n ALJ is not required to discuss every piece of medical opinion evidence." *Karger v. Comm'r of Soc. Sec.*, 414 Fed. Appx. 739, 753 (6th Cir. 2011). However, here the ALJ's scant discussion of the evidence does not make clear whether he ALJ considered all the relevant evidence, nor does it allow this Court to conduct a meaningful review of his decision.

For example, while the ALJ cited to some mental health treatment records from Pathways, Inc., he did not discuss mental health records dated after August 28, 2009. The records not addressed include Exhibit 17F (Tr. 566-577) and Exhibit 18F (Tr. 578-584), which contain treatment notes from the period of May 21, 2009, through May 13, 2010. Because the ALJ did not mention them, it is unclear whether he considered these mental health records when assessing Johnson's RFC.

Moreover, other than a brief reference to ME Dr. Steiner (Tr. 26), the ALJ's decision contains no discussion of the other opinion evidence in the record. Thus, the ALJ did not discuss

---

[13] The undersigned notes that Johnson does not rely on a treating source opinion.

18

Dr. Halas's December 3, 2009, consultative evaluation,[14] or the opinions from state agency reviewing psychologists, or the consultative and reviewing physicians' opinions with respect to Johnson's physical impairments. Additionally, other than indicating that Dr. Steiner's opinion comported with the RFC in ALJ Round's prior disability determination, the ALJ did not actually state what weight he gave Dr. Steiner's opinion.

Defendant argues that the ALJ's failure to discuss Dr. Halas's opinion is harmless error because the ALJ implicitly accepted Dr. Steiner's opinion and therefore implicitly rejected Dr. Halas's opinion. Doc. 16, p. 14, n.4. However, Defendant's argument requires the Court to speculate at two levels. First, since the ALJ did not assign weight to Dr. Steiner's opinion, the Court must speculate as to the weight that the ALJ provided to that opinion. The ALJ found that Dr. Steiner's opinion comported with ALJ Round's prior decision of November 28, 2008. However, as noted above, the ALJ found severe impairments in addition to those found by ALJ Round but did not discuss or address how Dr. Steiner's opinion was considered in light of the new evidence the ALJ relied upon to conclude that Johnson had additional severe impairments and limitations. Second, the Court must further speculate as to whether the ALJ provided any weight to Dr. Halas or, if not, why the ALJ rejected Dr. Halas's opinion. The ALJ's almost non-existent discussion of the opinion evidence and inadequate discussion of treatment records is not harmless error. *See Karger*, 414 Fed. Appx. at 753-754 (when reversing and remanding the ALJ's decision for failure to adhere to the treating physician rule, the court took issue with the ALJ's failure to discuss the opinions of non-treating sources).

Considering the ALJ's minimal discussion of the evidence, it is unclear that the ALJ considered all relevant evidence, including treatment records after August 28, 2009, and Dr.

---

[14] Although the ALJ listed Exhibit 11F, Dr. Halas's December 3, 2009, evaluation, along with other exhibits (Tr. 26), the ALJ failed to discuss Dr. Halas's opinion or indicate what weight, if any, he provided to that opinion.

Halas's opinion.  Even if the ALJ considered all the relevant evidence, the Court lacks the ability to conduct a meaningful review of the ALJ's decision to determine whether it is supported by substantial evidence because the ALJ failed to explain how he accounted for that evidence when assessing Johnson's RFC.   Accordingly, although reversal and remand may not result in a finding of disability, reversal and remand is warranted to ensure that all relevant evidence has been considered in reaching a disability determination with respect to Johnson's August 14, 2009, application.

### VII. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings.[15]

Dated:  April 8, 2014

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[15] This recommendation should not be construed as requiring a determination on remand that Johnson is in fact disabled.